The following opinions were delivered :
By Chief Justice Savage.
The general questions in the case are, 1. Whether the legacy vested in Mrs. Paterson ? and, 2. If so, whether it was or was not divested by her death under age, and without lawful issue 1 Both these questions depend much upon authority. The intention of the testator is always sought for in the construction of wills, and when that intention is ascertained, it will be executed, provided it is consistent with the laws of the land. It must be constantly borne in mind, that from the decisions of courts giving a construction to certain phrases, language often acquires a technical meaning, which seems to be quite the reverse of the common acceptation of the terms. If the gift is absolute, the legacy vests upon the death of the testator, with the assent of the executor, though the time of payment may be postponed ; but if the gift is conditional, depending upon some future contingency, the legacy does not vest until the contingency happens. The clause of Mr. Ellis’ will, to which we are now to give a construction, contains no absolute bequest in terms, nor is there any express construction. We are therefore to collect the intention from the whole clause, in connection with the whole will.
The clause commences with directions to his executors to set apart $20,000 from the body of his estate and invest it in the name of his infant daughter. The preceding clause in the will had directed the executors to invest $20,000 in their own names for the benefit of the widow. His object in that direction was to place that sum out of the reach of any future husband she might marry and to prevent its going ultimately out of his family ; for he gives_ his widow the power of disposing of that sum as she pleased among their children, *269 but he does not give her the money itself. When it was manifestly *his intention that that sum should remain as a portion of his estate, he directs it to be invested in the name of his own representatives, (his executors.) When he comes, in the clause in question, to make provision for his infant daughter, he directs a different investment. It is not now in the name of his executors, but in her own name ; and the income is all to be appropriated to her benefit, or again invested in her name, and this to continue until she shall attain the age of twenty-one, and then the whole principal and interest is to be at her own free and absolute disposal. The testator does not throughout make use of the usual words “ give and bequeath.” The interest is to be received by the executors, not as executors of his last will and testament, but as guardians of the daughter’s estate, Her mother was guardian of her person. Considering this clause, thus far there seems nothing to raise a doubt of the intention of the testator to give absolutely the legacy contained in it to his daughter, Eliza Emily, but not to be at her disposal until she should be twenty-one years of age. The only doubt on the subject arises from what follows. He provides, that in case of the death of his daughter, leaving lawful issue, such issue shall be entitled to the portion of his estate intended to be given to his said daughter, provided she shall attain the age of twenty-one years. Had the lagacy been given to her in general terms, such as, “ I give and bequeath to my daughter, E. E., $20,000 provided she shall attain the age of twenty-one years,” there could be no question that the word provided would import a condition; and unless the legatee did attain the age of twenty-one, the legacy should not be paid; it could not vest until the contingency happened. But the whole clause must be considered together. A multitude of cases were referred to as calculated to throw light upon this subject, and it will therefore be proper to examine at least some of them.
The first case to which I will advert is Fonereau v. Fonereau, 1 Ves. sen. 118, 3 Atk. 645, decided in 1748. The will was thus ; “ I give my grand-son, Claudius F., when he shall attain twenty-five, £1000, which I empower my executors to lay out in such securities as they shall think fit; and the interest and income thereof to be for and towards his education as they shall think fit; and also part of the principal to put him out ^’apprentice ; the remainder to be paid him when he shall attain twenty-five, and not before.” Lord Hardwicke held that this was a vested legacy, and must be paid, though the legatee died before twenty-five; that time was inserted, not to postpone the vesting of the legacy, but the payment. He conceded that a legacy given barely at twenty-five does not vest, time being annexed to the substance; but if it be, to be paid at twenty-five, it vests immediately upon the testator’s death, time being annexed to the execution. He said when interest is given, it vests the principal; he also relied upon the provision to lay out part of the principal. This is not so strong a case as the one before us, and yet Lord Hardwicke says; “ This is a very strong case to make it vested and transmissible, notwithstanding the dying before twenty-five.” In that case, the executors were to take the securities, and I infer in their own names, as they were prohibited from paying part till he was twenty-five ; here the whole was to be invested at once in the name of the legatee.
In Green v. Pigot, 1 Brown’s Ch. Cas. 104, 5, decided in 1781, Lord Pigot gave several legacies to be paid to females at 21, or marriage, with four per cent, interest; and if either should die under 21, and unmarried, the legacy to the person dying should hot be paid, but be considered part of the residue of his personal estate. Upon application, the money was ordered to be paid into the bank, though the plaintiff was under 21. Lord Thurlow said, giving interest *271 even at two per cent, vests the principal. In Monkhouse v. Holme, 1 Brown’s Ch. Cas. 298, decided in 1783, the sum of £800 was set apart for the use of the widow during life, and to be divided after her death; £100 to go to Jonathan Monkhouse, who however died before the widow. The legacy was ordered to be paid to his representatives by Lords Commissioners Loughborough, Ashurst and Hotham. Lord Loughborough says, “ I rather take the rule to be, that where the time is annexed not to the form but to the substance of the gift, then it lapses by the death of the legatee.” In Booth v. Booth, 4 Ves. jun. 400, 406, 409, decided in 1798, the testator gave the residue of his estate to trustees to invest the same, and pay the dividends to P. Booth and A. Booth, until their respective marriages, and thereupon to assign their respective moieties. Phebe died unmarried. *Her sister claimed under her will, and the master of the rolls decided that marriage was not a condition precedent, but merely denoted the time of absolute possession, and was analagous to the specification of a particular age when the legacy should be paid. In May v. Wood, 3 Brown’s Ch. Cas. 471, decided in 1792, the testator made his will as follows : “ I give to my daughters, Mary and Margaret, the sum of £3000, navy annuities, and all the dividends and proceeds arising therefrom, to be equally divided between them, and all my estate at Osyth, to be equally divided between them when they shall arrive at 24 years of age.” This legacy was held to vest immediately, and that the time of payment only was postponed, and a decree was made in favor of May, who married one of the daughters, which daughter died after the age of 21, and before 24. The master of the rolls, Sir Richard P. Arden, held that the legacy vested in presentí, and the age of 24 was only the period when the legatee should come into full possession. He held the rule to be, that time refers to„ the period of payment, unless it clearly appears that the testator intended it as a condition precedent; and he considered the word when as not importing a condition. In this respect, he is supposed by his successor, Sir William Grant, to have been not quite correct. He considers it as a condition, except where it is used for the sole purpose of postponing the time of payment; but he held that it might be controlled and explained by other circumstances, so as to postpone the payment only, and not the vesting. And in the case of Hanson v. Graham, 6 Vesey, 239, decided in 1801, where James Graham, by his will, gave the three children of his daughter, Mary Hanson, £500 apiece ivhen they should respectively attain their ages of 21 years, or days of marriage, which should first happen, and further directed the interest of the said legacies to be laid out for the benefit of the legatees, at the discretion of his executors and trustees, until they should attain the ages of 21, or day of marriage ; and where one of the legatees died at the age of nine, the question was whether this legacy was vested. The master of the rolls said he should have decided against the plaintiffs who claimed the legacy, if it stood merely upon the first words ; but he remarked, “the legacy is accompanied with *an absolute gift of the interest, which, according to the established rule, has the effect of vesting it.” In several of these later cases, the case of Love v. L'Estrange, 3 Bro. P. C. 337, decided in 1727, was referred to. That was the devise of the residue of the estate of the testator to trustees for the benefit of Walter Nash. The trustees were to improve the same to the best advantage till Walter Nash should attain the age of 24 years; after the age of 21, hé was to receive an annuity of £10, until his age of 24, and thenceforth the trustees held in trust for him, his executors, administrators and assigns. Walter Nash attained his age of 21, but died before 24, intestate. Lord Chief Justice King decided that the legacy vested, and directed it to be paid to the next of kin of the lega *273 tee; and his decree was affirmed in the house of lords. In Steadman v. Palling, 3 Atk. 423, Lord Hardwicke states the rule to be, that if a legacy be devised to one generally, to be paid or payable at the age of 21 or any other age, and the legatee die before that age, yet this is such an interest vested in the legatee, that the executor may recover it; for it is due presently, but payable in future, the time being annexed to the payment, and not'to the legacy itself; but if a legacy be devised to a person at 21, or if or when he shall attain the age of 21, and the legatee dies before that age, the legacy is lapsed. In the case then before him, the grand-mother gave certain property to her daughter to be converted to money, and paid by her to her own children, (the grand-children of the devisor,) “ at such time as they shall severally attain their respective ages of 21, or sooner, if my daughter shall think fit.” This legacy was held to be vested by virtue of the words or sooner, &c.; and the chancellor remarked, that without those words, he should have decided that it would have been as if the testator had said, I give it them at the age of 21. The case of Cave v. Cave, 2 Vernon, 508, decided in 1705, also exemplifies the same rule, and shows its antiquity, having been determined more than two centuries ago. Sir Roger Cave, by his will, devised £4000 to his son Charles, to be paid him at his age of twenty-five, and interest in the mean time, and to have a maintenance. Charles died under age, but it was held to be a vested legacy ; for although it was not payable till his age of twenty-five, yet it was to carry interest immediately. * Van v. Clark, 1 Atk. 510, decided 1739, is a case showing how scrupulously courts have adhered to the rule above mentioned.
There is but a slight difference between the cases of legacies given at a day or payable at -a d.ay; but it is adhered to : time in the first case being annexed to the legacy itself, in the second only to payment. Mary Craven devised to Godfrey Clark certain real and personal estate, to be disposed of by him and certain legacies paid. She gives £2000 to Thomas Lewis in trust, and ffior the benefit of his daughter Mary, and directed that he should place it at interest until she should attain the age of 18 or be married, and also that Thomas Lewis should put out the interest as the same should arise ; and that he should pay the whole to his daughter, upon her attaining her age of eighteen or marriage ; the £2000 to be paid to the trustree within one and a half years after her decease. Thomas Lewis, the trustee, died before the testatrix, and Mary Lewis died half a /ear after the testatrix. The Lord Chancellor said that the infant dying before the time of payment to the trustee, makes this legacy not raisable for the benefit of the plaintiff, her representative. He states the general doctrine to be, that a legacy given out of personal estate, payable at a certain time, or if given at a certain time and interest in the mean time, is a vested legacy; but the rule as to legacies out of real estate is otherwise ; for if given at a certain time, or payable at a certain time, if the legatee dies before the time, it sinks. He finally put his decision upon the practice of the court to prevent', as far as it possibly can, the raising portions out of land for the benefit of representatives. This case therefore proves nothing against the vesting of the legacy in Mrs. Paterson. In Robinson v. Fitzherbert, 2 Bro. C. C. 127, the master of the rolls, Lord Kenyon, decided, in 1786, that a bequest of the interest of a sum of £1000, to commence the day after the death, of the testator, and to devolve upon the heirs of his body alter his death, vested the legacy absolutely in the first legatee—probably upon the principle that such a bequest as in relation to real estate would create an estate tail, in relation to personal conveys the absolute property. In Batsford v. Kebbell, 3 Ves. 363, decided in 1797, the testatrix gave to Robert Endly the dividends upon *274 £500 bank annuities, until *he should arrive at the full age of 32 years] at which time she directed her executors to transfer the principal. Lord Chancellor Rosslyn said that he found capital stock and dividends distinct subjects of legacy; that there was no gift but in the direction for payment, and that direction attached only to a person 32 years of age ; th'e legacy, therefore, never vested. This case exemplifies the distinction taken in previous cases ; there was no gift, directly or indirectly, only in the direction for payment. The next case in the same volume is one of a vested legacy. Wadley v. North, 3 Ves. 364. The testator devised all his estate in trust, first to pay the annual produce thereof to his mother and sister and the survivor, and after the death of the survivor, to apply the same to the use of all the children of his sister living at the time of her death—each receiving his share upon arriving at the age of 21 years; and if but one survived, then to pay the whole to such survivor at 21 years. The testator died, then the sister, then the mother. Two of the children died after the death of their mother, and before the death of the grand-mother, both under 21. Their father took administration and received their shares. A bill was filed by the two surviving children, and one question was whether the children who had died had vested interests. The master of the rolls said, if the testator had stopped after directing each to receive his share at 21, there could be no doubt that it would be a vested interest; the principal being given, the payment postponed. He held the legacy vested in all who survived the testator’s sister. He remarks upon the case of Batsford v. Kebbell, that there were no words of gift of the principal, but only the dividends, and the principal be transferred at a particular age : therefore it did not vest until that time. In Branstrom v. Wilkinson, 7 Ves. 422, decided in 1802, the testator gave one dock-share to tire twin children of his niece, when they shall attain the age of 21, to be equally divided between them, and appointed their father trustee for them during their minority ; if they or either of them died, then over to their mother. The father, mother, and two infant children filed a bill against the executor, praying a transfer of the share, and the question *was whether the infants had a vested interest in the dividends.
The master of the rolls said it was perfectly clear that the testator intended to postpone the possession, not the vesting; a trustee was appointed ; there could not be a trustee of nothing.
These are the leading cases referred to by counsel on both side, and I shall cite no more. There is no discrepancy between them; they all agree that if there is a gift of the principal, unconnected with the time of payment, then the legacy vests ; if there is no gift, except at the time of payment, then it does not vest until the time arrives ; and if it never arrives, the legacy is lapsed. Though the legacy in question is not given in so many words in Mr. Ellis’s will, it is in substance. 1. It is separated from the mass of his estate. 2. It is vested in the name of the legatee. 3. Gaurdians are appointed of her estate; she had no estate but this legacy ; and, as was said of trustees in the case last cited, there cannot be a guardian of nothing. 4. The interest is all appropriated to her use, or invested in her name and for her benefit. 5. The whole is to be paid to her when 21 years of age—clearly devoting the whole to the legatee, but postponing the time of payment till she should be capable of managing her own property. So far as the devise relates to Eliza Emily, there can be no question. There is no case referred to which is as strong as this. The only doubt arises from the word provided, in that part of the clause giving the property to her child or children in case of her death before 21, and leaving lawful issue ; and when that is taken in connection with the preceding circumstances, it does nothing more than refer to the time before designated when she was to *276 nave the entire control of the property. It is intended merely as a recital of the previous devise to her; and had the testator intended to limit the vesting as well as the payment to the age of 21, it was very easy to say so ; but what he has said rebuts that idea in all the circumstances enumerated.
There can be no doubt, I think, that the legacy vested in Eliza Emily upon its being separated from the testator’s estate and invested in her name; and had she died the next day, her representatives would have been entitled to receive it when payable; or had there been any ground to suspect #the integrity or solvency of the trustees appointed by the will, the court of chancery would at any tinge have directed the payment of the money into court, or to other trustees, or its investment for the benefit of the infant legatee.
The second general question which I propose to discuss is, whether the legacy having vested, has been divested by the death of the legatee without lawful issue under twenty-one years of age. The language of the will is as follows : “ But in case my said daughter Eliza Emily shall die before she arrive at the age of twenty-one years, and without leaving lawful issue, then my will further is, that the said sum of §20,000, with such additions as may be made thereto by the accumulation of the interest or income thereof, be distributed as is herein afterwards directed respecting the residue of my estate.” The appellant -contends, 1. That the devise over is void, because repugnant to what precedes it, and 2. That the legal effect of this clause, in connection with the previous bequest, is to give to the legatee an estate such as, if the subject were real estate, would create by the English laws an estate tail; and that in such cases, where the property is personal, by the common law the gift is absolute. The respondents insist that if the legacy were vested, the clause last above quoted contains a valid executory devise, and the amount sinks into the residuum of the estate.
To show that the absolute property being given to the legatee, the subsequent devise over is void for repugnancy, several cases have been referred to, some of which I will state. And first, the case of The Attorney General v. Hall, 8 Viner, 103, decided in 5 Geo. 2. The testator devised real and personal estate to his son and his heirs, and says, if his son should die leaving no heirs of his body living, then so -much as the son should be possessed of at his death, he devised over. The court, Lord King, held the limitation over void, as the absolute ownership had been given to the son, and the devisees over were to have no more than the first devisee had left unspent, and therefore he had power over the whole. It resulted from his interest; not express. The words that give an estate tail in the land, give the entire property of personal estate. Flanders v. Clark, 1 Vesey, sen. 9, 3 Atk. 509, decided *in 1747. The testatrix gave her son by her will £150, and interest till paid, but he should not dispose of it to any wife; and if he died without issue, then it should revert to the testatrix’s family. Lord Hardwicke held the legatee had the whole property. Butterfield v. Butterfield, 1 Ves. sen. 133, decided in 1748. The testator directs £400 put out on good security for his son T. B., that he may have the interest for his life and the heirs of his body ; if he die without issue, then over. Lord Hardwicke said, if words would give an entail of lands, it vests the whole property in personal. He did not then decide the case, but afterwards, p. 154, he held the limitation of a personalty too remote, there being nothing to restrain it to heirs living at the death of the legatee. He said that a direction to pay the interest to him, and the property going to his heirs, vested the whole interest in him. Bradley v. Peixotto, 3 Ves. 324, decided in 1797. The testator gave his son the divi *278 ¿lends from £1620 bank stock for life, and declared it was for his support, but if he attempted to dispose of it, he should forfeit it, and it should be divided among his other children. The master of the rolls declared the condition void and the bequest absolute. The same doctrine was reiterated in 1819, in Ross v. Ross 1 Jac. & Walk. 154. The testator gave his son £2000, to be paid at 25 ; and in case he should not receive or dispose of the same, then to return to the body of his estate and go to the heir in tail. The son died at 25, without receiving the legacy. The master of the rolls said the question was whether the absolute property was vested in the legatee ; that it clearly was so; the legatee had acquired an absolute interest. But, he said, if you give absolute property to a person, you cannot subject it for his life to a proviso, that if he does not spend it, his interest shall cease. He refers to The Attorney General v. Hall, and various other cases, as establishing that doctrine. It cannot be necessary, I think, to multiply cases on this point. Chancellor Kent has stated the substance of them very briefly; 2 Kent’s Comm. 352, 3, 4; that chattels or money may be limited over after a life interest, but not after a gift of the absolute property ; nor can there be an estate tail in a chattel interest, for that would lead to a perpetuity, and no remainder over can be permitted on such a *limitation; that it is a settled rule, that the same words which under the English law would create an estate tail as tc freeholds, give the absolute property as to chattels. This doctrine is expressly asserted in Jackson v. Bull, 10 Johns. R. 19, and 16 id. 537, 584. It is essential to the validity of an executory devise, that it cannot be defeated by the first taker; but if the absolute property or right of disposal is given to the first taker, he may defeat the devise over, and therefore it is void.
I will not advert to any more cases under this head, but will proceed to the consideration of a few of those which have been decided upon the construction to be given to the words dying without issue, or dying without leaving issue. Preparatory to the investigation of that point, it is proper to refer to the definition of an estate tail, and of an executory devise. Without going into the derivation and original meaning of the word/ee, it is sufficient to say that in modern English tenures a fee signifies an estate of inheritance, and a fee simple imports an absolute inheritance clear of any condition or limitation whatever, \and when not disposed of by will, descends to the heirs generally. There are Id so limited fees: 1. Qualified or base fees ; and 2. Fees conditional at the cotpmon law. A base fee was confined to a person as tenant of a particular pláóe. A conditional fee was restrained to particular heirs, as to “ the heirs of a mSn’s body.” The object of the grantors in conveyances to a man and the heirs of his body, probably was to perpetuate the property in the family of the grantee. The courts in England have, however, leaned against perpetuities, and they construed such conveyances as carrying a conditional fee; and if the grantee died without such heirs, the land should revert according to the condition implied in the grant; but if he had such heirs, the estate which before was conditional, became absolute by the performance of the condition; at least for certain purposes : one of which was to enable the grantee to alien the land, and thereby bar his issue of the inheritance and the grantor of his reversion. This such grantees were in the habit of doing and purchasingback the lands, after which they held them in fee simple absolute. Such was the state of things previous to the ^statute of Westminster 2d, commonly called the statute dedonis, passed 13 Edw. 1, ch. 1, about A. D. 1285. The nobility were not pleased with the liberty taken by the courts in freeing estates from the clogs intended to be put upon alienation, and in the preamble to the statute de donis it is recited that “when one giveth land to another and the heirs of his body, *279 it seemed, very hard to the grantors and their heirs that their will expressed in their grant should not be observed; instead of which, after issue born, the grantee had power to alien his land contrary to the mind of the giver, and contrary to the form of the gift.” The statute then enacts, in substance that the will of the donor shall be observed; that the land shall revert, if there ndver was issue, if such issue fail, or if the heirs of the body of such issue fail; that the donee shall not have power to alien the land, butit shall remain to his issue, or revert if issue fail. The statute was understood as confirming the estate to the issue of the grantee until such issue should fail. Under this statute there could be no reversion so long as the issue of the grantee had issue, and so on ; but whenever that failure happened, be it in the tenth generation, or further on, then the estate reverted. Hence failure of issue, and dying without issue, might well be understood as meaning not only a failure of the grantee to have issue, but a failure of the issue of such issue, at any period of time, or an indefinite failure of issue ; and such accordingly was the construction. Under this statute the grantee had no longer a conditional fee ; but his interest was denominated a fee tail, that is, feo-dum taliatum—a fee from which the general heirs were taille cut off. This statute was subsequently evaded by means of fines and common recoveries. Having thus very briefly stated what a fee tail is, I proceed to state what is an executory devise.
The most general definition of an executory devise is, that it is “ a devise of a future interest in lands, or chattels, not to take effect at the testator’s death, but limited to arise upon some future contingency.” A more limited definition is, “ such a limitation of a future estate or interest in lands or chattels as the law admits in the case of a will, though contrary to the rules of limitation in conveyances at ‘common law.” All future limitations, even in wills which are consistent with the rules of the common law respecting contingent remainders in a deed, are in a will construed contingent remainders. 2Fearne, 1, 2. One peculiarity belonging to this estate is, that it cannot be barred by fine or common recovery ; and therefore to prevent a perpetuity, it became necessary to prescribe bounds and limits beyond which it should not extend. And it has accordingly been determined that it must vest within the compass of a life or lives in being and 21 years and nine months afterwards. But where an executory devise is limited on an event which may not happen within the period last mentioned, as upon a general failure of heirs or issue, it is void. It is of no importance how the fact turns out; it is void at the commencement, if the event on which its existence depends may exceed the preceding limits. 6 Cruise, tit. 32, Devise, ch. 17.
It has been well observed by Ch. J. Parsons, in Ide v. Ide, 5 Mass. R. 500, that when words have long been used in a technical sense, and have received an uniform construction, they have become a rule of property, and the construction should be adhered to, otherwise titles to estates may be unsettled. The proper words in a grant or devise, to convey directly an estate tail, are, to the grantee and the heirs of his body lawfully begotten. Such a devise in England, of land, wpuld convey an estate for life in the grantee, and the inheritance to his children. Such a devise there of chattels would convey to the grantee the absolute property. The law in both cases abhors perpetuities. A perpetuity in lands may be barred by a fine or a common recovery; but not so as to personal property, and therefore it cannot be prevented but by declaring that such a devise gives the absolute property. In this state, such a devise of lands would, by force of our statute, convey an estate in fee simple ; and as to personal property here, such a devise must be governed by the rules of the common law. It seems to be well settled, also, *281 that a devise of land for life or in fee simple, with a devise over if the devisee die without issue or without leaving issue, shall be a devise in tail to the first devisee. 6 Cruise, 290. 9 East, 382. I have proceeded under this branch of the case without referring to *many cases to fortify the positions assumed, because I understand that thus far there is no dispute. We have now, however, reached the point where the controversy begins, and I will endeavor to state it as I understand it.
The testator said in his will, that if his daughter should die without leaving lawful issue, then the legacy given her should go into the residuum of his estate, and be distributed as he therein directs. The appellant says that this expression, without leaving lawful issue, means an indefinite failure of issue, or, in the language of the statute, de donis, if her issue fail. The respondents say that the language used means without lawful issue at the time of her death. If the appellant’s construction be the true one, he should prevail, and the decree of the court of chancery be reversed; if the respondents are right, they must prevail, and the decree be affirmed. Were the question to be determined by the present common acceptation of the terms, we cannot doubt that the testator meant issue living at the death of his daughter ; but if the language used by him has acquired a legal technical meaning, of a very different import, it is our duty to give it its legal signification ; for otherwise, as Chief Justice Parsons has said and many other great judges before him, we might unsettle many estates held under conveyances or wills drawn with special reference to the legal and settled construction given to this language. It is conceded that there are authorities both ways, and we must ascertain on which side the balance lies. The statute de donis was passed in 1285, in the reign of Edward I, and the statute of wills was passed about 1540, in the reign of Henry VIII. We have several cases in the reign of James I, 9 Co. 127, Cro. Jac. 448, in which a devise to one for life, and if he die without issue, then remainder over, was held to give an estate tail by implication. The case of Pells v. Brown, Cro. Jac. 590, was decided in the same reign, in the year 1620, and is often referred to in discussions on this subject. It is the case which Lord Kenyon considered in Porter v. Bradley as the foundation and magna charta of this branch of the law, and therefore deserves some attention. William Brown had three sons—William, Thomas and Richard. The father devised his land to Thomas, his son, and his heirs forever, *paying to his brother Richard £20 at the age of 21 ; and if Thomas died without issue, living William, his brother, that then William, his brother, should have those lands to him, his heirs and assigns, forever, paying the said sum as Thomas should have paid. Thomas entered, suffered a common recovery, devised to the plaintiff’s wife, and died without issue, in the life of his brother William. It was held that Thomas took a fee, and not an estate tail. The court relied on the circumstances, 1. That it was devised to him and his heirs, paying Richard £20; 2. The clause “ if he died without issue” is not absolute and indefinite ; it is, “if he died without issue, living William.” It was also held that the devise over was a good executory devise. The words here, die without issue, did not mean an indefinite failure of issue—not because that was not their legal signification, standing by themselves, but because, taking all the expressions together, that construction was rebutted : 1. By requiring payment of £20 to his brother, the whole estate was intended to pass ; 2. The dying without issue must be in the lifetime of his brother; it meant, therefore, issue living at the death of the devisee. This case, therefore, does not impugn the doctrine, but supports it, that the words dying without issue, without something to qualify them, mean an indefinite failure of issue.
*283 The next case which I shall refer is one with which this court is familiar, to wit, Forth v. Chapman, 1 P. Wins. 663, decided in 1720. Walter Gore, by will, devised the residue of his real and personal estate to Chapman in trust, for the use of his nephews, William and Walter Gore ; and having given several legacies, he gave certain freehold and goods and chattels to William Gore, “ and if either of his nephews, William or Walter, should depart this life and leave no issue of their respective bodies” then he gave the lease holding premises to the children of a brother and sister. Upon this will, the question arose whether the limitation over of the leasehold premises to the children was void, as too remote. It was decided by the master of the rolls that the devise over was void. Afterwards, the cause coming up upon appeal before Lord Ch. Parker, the decree was reversed. He said the words die *without leaving issue, in the vulgar and natural sense, must be intended—leaving issue at his death; and then the devise over is good. 2. That the reason why a devise of a freehold to one for life, and if he die without issue, then over, is determined to be an estate tail, is in favor of the issue; but such intendment does not exist as to a devise of a term of years, since the heirs cannot have it by any construction. 3. This will carried a freehold as well as a leasehold, so that the same words in the same clause should be taken in two different senses. As to the freehold, he admitted the words die without issue meant a failure of issue at any time; and with respect to the leasehold, the same words should be intended to signify dying without issue at their death. In Atkinson v. Hutchinson, 3 P. Wms. 258, decided in 1734, the devisor was possessed of a term for 40 years, and devised the same in trust for the benefit of his wife, and then his children ; and if they should all die without leaving issue, then to the use of Hutchinson. The counsel for the plaintiff insisted that the devise over was void, and urged the rule that where the words of a will devising real estate are sufficient to give an estate tail, there the same words applied to a term, convey the entire interest. Lord Ch. Talbot said that the rule was laid down too broadly, and was confined to words which give an express estate tail, but not where the words give an estate tail by construction. In this distinction his lordship was wrong, as we shall hereafter see. For example, if a term be devised to A. and the heirs of his body remain to B., the remainder is void ; but the words in the will would, if used with respect to freehold, pass an entail by implication only. ' He relied on Forth v. Chapman. This case contained the words leaving issue, as did Forth v. Chapman. The reporter does not state that the word leaving was relied on either by Lord Macclesfield or Lord Talbot; but Lord Hardwick, who was counsel in the case of Forth v. Chapman, states that great reliance was put upon it as denoting the time of the failure. 2 Atk. 313, 647. This case was not decided upon the word leaving, but on a supposed difference where an estate tail was created expressly or by implication—a distinction which, if it ever existed, has been long since exploded. In Sheffield v. Orrery, 3 Atk. 282, decided in *1745, the words were, dying without leaving any issue behind them, then over; this was held by Lord Hardwicke a good limitation over. He supports the case of Forth v. Chapman, and admits that upon a general dying without issue, a limitation would be void. Here are the words behind them, which Lord Kenyon considered controlling in Porter v. Bradley.
The case of Denn v. Sherston, Cowper, 410, decided in 1776, was ejectment by a person claiming under an executory devise of lands where there had been a failure of issue of the first taker. The person in possession claimed that the estate created by the will was an estate in fee, not in tail; and that was the question. It contains nothing to the point in this case but an obiter *285 dictum, of Lord Mansfield, who said that dying without issue upon a limitation of lands, had never been confined to issue living at the time of the death; that the distinction is between a devise of lands and personal estate; in the latter case the words are taken in their vulgar sense, that is, dying without leaving issue at the time of his death ; in the former they are taken in a legal sense, and that is when there is a failure of issue. That point was not before Lord Mansfield ; what he said was mere conversation, and the impropriety of putting down such loose remarks as an adjudication appears from this case. Lord Mansfield is made to go farther than any of the chancellors who had examined the subject. Lord Hardwicke says that upon such general words a limitation would be void; and he has several times stated that Lord Macclesfield, in Forth v. Chapman, put great strength upon the word leaving. They have all, except Lord Mansfield, if he in this case is to be considered as deciding the point, found some word or circumstance upon which to take the case out of the general rule. But Lord Mansfield is made to state it more broadly; and as so stated, it is expressly denied by Lord Hardwicke. In Goodtitle v. Pegden, 2 T. R. 720, decided in 1788, Lord Kenyon says Forth v. Chapman had been uniformly followed, by a series of cases, to the present time. The devise in the will before him was of leasehold premises, which the testator gave to his grandson and the heirs lawful of him forever; but in case he should happen to die and leave no *lawful heir, then over. Lawful heirs, he says, meant heirs of the body, and must be confined to leaving no lawful heir at the time of his death. He evidently relied upon the word leaving, as confining the failure of issue to the time of the death. In Porter v. Bradley, 3 T. R. 143, decided in 1789, the subject of the devise was freehold. The devisor gave to his son, Philip Dobin, his heirs and assigns, the premises, and adds, “ but my will is, that in case my said son, P. D., shall happen to die leaving no issue behind him, then over.” Lord Kenyon said that the first part of the devise carries a fee, but those words may be restrained by subsequent ones so as to carry only an estate tail. He admitted that, if the limitation over had been “ in case he shall die without heirs,” then over, P. D. would have taken an estate tail; but the words were, leaving no issue behind him, which brought it within the case of Pells v. Brown. He here denies the distinction taken by Lord Macclesfield between the meaning of the words dying without issue as applied to real and personal estate. The authority of Lord Kenyon must certainly be admitted to be in favor of construing the words according to their common acceptation, if there is any thing added besides barely dying without issue. The words in Roe v. Jeffery, 7 T. R. 589, decided in 1798, were, depart this life and leave no issue, then over. This was held a good executory devise ; and Daintry v. Daintry, 6 T. R. 313, was referred to, where real and personal estate were both devised in the same will. The testator says, “ if my son shall happen to die without leaving issue of his body lawfully begotten, then over.” Upon the argument, Lord Kenyon intimated that an estate tail was created in the real estate by implication, but the devise over of the personalty was good. But the court certified that the legatee took the personalty absolutely ; it followed of course, they said. It could not follow of course, if the devise over was good; but it would if the devise over was void, and so it must have been considered. In Crook v. Devandes, 9 Vesey, 203, decided in 1803, Lord Eldon supports the distinction in Forth v. Chapman, and states that the words leaves no such heirs, mean, at his death, as to personal property; but in the case before him, he held that the legatee took an absolute interest in the personal estate, *where the words were, “but in case my grandson dies and leaves no such heirs, (heirs of the *286 body,) then I bequeath all the said estates and premises to my grandson J. C. C., the plaintiff. These are some of the leading cases cited by the respondents counsel.
On the other hand, we have a multitude of references, to some of which 1 shall refer. Keily v. Fowler, 6 Brown’s P. C. 309, decided in 1768, arose upon a devise in the will of William Cronyn, who gave to his daughter Jane all his property, real and personal, provided she married with the consent of his executors ; if she should marry without such consent or die without issue, then the property devised to her should return to his executors, to be distributed in the manner directed by the will. The daughter married with the consent of the executors but died without issue. It was held by the judges that the bequest over should take effect upon the death of the daughter, without issue living at the time of her death. It was evident in this case, from other circumstances, that such was the testator’s intent; and one which was sufficient of itself to show that the testator did not mean an indefinite failure of issue, is this; that upon the daughter’s death without issue, the property was to return to his executors, persons then in being. Three years afterwards, i. e. in 1771, came on the important case which is known by the name of Daw & Pitt, or Earl Chatham v. William Daw Tothill, 6 Bro. P. C. 450. The question arose upon the will of Robert Tothill. He gave Sir William Pynsent the dividends of £4000 stock in the Bank of England, the yearly income of six exchequer annuities, and a mortgage of £1000; to Leonara Ann Pynsent, daughter of Sir William, he gave both real and personal estate during her natural life, and after her decease, to the heirs male of her body lawfully begotten, forever; and for want of such issue, to William Daw, upon condition that he takes the name of Tothill, &c. Miss Pynsent died before her father, in 1763, and bequeathed all her real and personal estate to her father, who took possession of the same. Sir W. Pynsent died in 1765, having made his will and given all his real estate and the residue of his personal to Earl Chatham, the appellant. After Sir W’s death, the respondent, Daw, claimed the bank *stock, annuities and leasehold houses. A bill was filed by Daw,
and answers put in. The cause was heard on bill and answer. Sir Thomas Sewell, master of the rolls, ordered the bill to be dismissed. About three years afterwards, an appeal was brought to the lords commissioners, who reversed the decree of the master of the rolls, and made a decree in favor of the respondent. From this latter decree the appellant appealed. The cause was argued for the appellant by Lord Thurlow and J. Madock; for the respondent, by Wedderburne and Dunning. For the appellant it was argued that the giving the real and personal estate to Miss Pynsent for life, remainder to the heirs of her body, gave her an estate tail in the real estate, and an absolute interest in the personal estate ; and for the respondent it was argued that only a life estate was given to Miss Pynsent, and as she had died without issue, male, the devise over was good. After the argument, the following question was put to the judges : Whether, in the event which has happened, the devise to the respondent William Daw Tothill, of the bank stock, &c. is good and effectual, or void. The unanimous opinion of the judges was that the devise was void, arid the decree was reversed. This case was decided in 1771, fifty-one years after the case of Forth v. Chapman. Whether that case was cited is not stated in the report. It appears in a subsequent case that such was the fact. It is not to be denied that the same question was involved. In both cases real and personal estate were given in the same words. In Forth v. Chapman the devise over was, if the legatees should depart this life and leave no issue of their respective bodies. In Pitt v. Daw, the words were, and for *288 want of such issue, (heirs male of her body lawfully begotten.) There is no difference between the two expressions, in substance, except it be what arises from the word leaving; and in the report of the case, no stress is laid upon it. Lord Hardwicke argued that cause, and he has said three or four times that Lord Macclesfield relied much upon it, and that as to the freehold, he held those words amounted to an indefinite failure of issue ; but as to personal pro • perty, they meant leaving issue at their death. As the cases are reported, they cannot stand together; and though it does not appear that Forth v. Chapman was overruled, yet such *would seem to be the effect of the decision in Pitt v. Daw. So well satisfied was Daw that Miss Pynsent took an estate tail in the freehold, that he did not claim that part of the property under the same devise over ; and the principle decided was, that the same words which applied to freehold carried an estate tail, gave the absolute property in personal estate. The same principle had been decided in the same court a few years after the decision in the case of Forth v. Chapman, in the case of Stratton v. Payne, 3 Br. P. C. 257, decided in 1726. William Payne had three daughters ; by his will he gave an annuity to one sister, and as to the rest of his estate, both real and personal, he gave an equal half to his sister Mary for her life, and after her decease, to the heirs of her body, &c. The other half he gave to his sister Ann, and to the heirs of her body, &c. and for want of such issue, or heirs of her body, he gave and bequeathed the same to the children of his sister Mary. The respondent Ann being advised that she was seized of an estate tail in a moiety of the real estate, and had an absolute interest in the personalty, exhibited her bill in chancery against her sister Mary and her children, the appellants, praying that the personal estate might be divided. The appellants, by their answers, claimed that she had only a life estate in the real and personal-estate. Lord Chancellor King decreed that the personal estate should be divided into moieties ; and that the respondent should have one half to her own proper use and benefit. From this decree the appellants appealed but the decree was affirmed. For the appellants it was argued, that it was plainly the testator’s intention that if the respondent should die without leaving any child at her death, the moiety devised to her should be divided amongst the appellants. For the respondent it was contended that no one principle of law was better known, or more established, than that when a personal estate is given to a man, and the heirs of his body, with remainders over to other persons, it is an absolute gift to the first devisee, and vests the entire property in him, and that the devise over was void ; and that if this rule was altered, no man would know when he was safe in his property. *In Beauclerk v. Dormer, 2 Atk. 308, decided in 1742, the testator made his will as follows : “ Miss Dormer I make my sole heir and executrix; if she dies without issue, then to go to Lord George Beauclerk.” The plaintiff filed his bill to establish his title to the personal property of the testator. The defendant levied a fine, and suffered a common recovery, and claimed the whole. The cause was elaborately argued. Forth v. Chapman, Atkinson v. Hutchinson, and many other cases were cited. The case was very fully discussed by Lord Hardwicke, in giving his opinion, and he said that none of them came up to the point contended for by the plaintiff; that ex vi termini as this is a limitation of personal estate, it shall be confined to a dying without issue living at the death 'of the first taker. He adds, it would be of very mischievous consequence, and introduce great confusion, if the court should admit of a distinction between chattels personal and chattels real. He also cited Lord Hale’s opinion as follows : “A devise to a man, and if he dies without issue, is always *290 construed to make an entail; and if the devise be to B. and the issue of his body having no issue at the time, it would be an estate tail, for the law will carry over the word issue, not only to his immediate issue, but to all that shall descend from him.” He concludes by saying that the construction contended for by the plaintiff was not supported by any case whatever, and as the words were general, the limitation over was void. This is one of the cases referred to by Chancellor Kent, where he remarks, that as Lord Hardwicke has equally commended and condemned the distinction in Forth v. Chapman, without any kind of explanation, his authority may be considered as neutralized, as mechanical forces of equal power, operating in contrary directions, naturally reduce each other to rest. In Chandless v. Price, 3 Vesey, 99, decided in 1796, the question arose upon a devise of real and personal property to C. Jennings, and after her decease without legitimate issue, to Sarah Medhurst. Lord Rosslyn said, the rule to try it by is this : Would the words give an estate tail in real estate ? If so, they give the absolute property in personalty, unless you can find in the will something to show the testator meant to tie it up. From the time of Beauclerk v. Dormer, the words die without * issue cannot be taken indefinitely.
The distinction taken by Lord Talbot, in Atkinson v. Hutchinson, 3 P. Wms. 258, that when the words would give an express estate tail the construction of law must obtain, but not where only an implied, estate tail was given was very much labored in Daw v. Pitt; for in that case there was manifestly but an estate for life, and the testator anxiously endeavored to restrain it to an interest for life, but that distinction was exploded ; and the rule is general, that where the words raise an estate tail in real estate, they give the absolute property in personal estate ; and if there is no distinct expression to restrain it to the time the law allows, the consequence must prevail, whatever is the intention. In Boehm v. Clark, 9 Ves. 580, decided in 1804, the testator gave the residue of his fortune to trustees, for the use of his brother, the plaintiff, during his life, with remainder in default of issue to Clement Boehm, for his use during life. The master of the rolls held the limitation too remote. He denies a dictum of Lord Hardwicke, in Trafford v. Boehm, 3 Atk. 449. In Barlow v. Salter 17 Ves. 479, decided in 1810, 'the devise was to the daughter of the testatrix: “ All my estate real and personal, of every sort and kind, to her and her heirs, and half the navigation money for he natural life; and in case she dies without issue-, all to be divided between my four nephews and nieces.” The master of the rolls, Sir Wm. Grant, says, that by some of the earlier cases, the judges inclined to hold these words to mean without issue at the death of the person named, but ever since the case of Beauclerk v. Dormer, a different rule has prevailed, and he considered it well settled that these words, without something more to limit them, must have their legal signification, viz. death without issue generally ; in other words, an indefinite failure of issue. Numerous cases might be cited, beside those already referred to, to establish the proposition that whatever would directly or constructively constitute an estate tail in land, will pass an absolute interest in personal estate; and Sir W. Grant says it has been so settled since the case of Daw v. Pitt, or Lord Chatham v. Tothill. See also Glover v. Strothoff, 2 Br. C. C. 37; Attorney-General v. Bayley, id. 558.
*The reason assigned by Lord Thurlow why personal property devised in the language of an estate tail passes absolutely is to effectuate the intention of the testator : as if a man gives an estate in general to A. for life, and adds, but if he dies without issue, I then give it to B.; B. has no immediate gift, but only a contingent interest upon A.’s dying without issue, and
*291 it would counteract the intention of the testator, if B. took it immediately upon the death of A.; therefore these words, in both real and personal estate, operate as an enlargement of the estate for life, for otherwise the issue of A. would not take at all—A. must have an estate which would devolve upon his issue. Upon that ground the court has extended the estate beyond an estate for life—in a freehold interest has deemed it an estate tail, and in chattel interest an absolute property. So in Doe v. Cooper, 1 East, 230, in a devise over, the words were, “in default of his leaving issue,” after an estate for life, were held to create an estate tail; though, as remarked by Lord Kenyon, the particular intent of the testator might be answered by giving the devisee only an estate for life, but the general intent was that all his issue should inherit before the estate went over. So, upon these words, “ It is my will, that if W. W. my son, shall happen to die, and leave no issue of his body lawfully begotten, then over to my son Richard.” Baron Price decided that an estate tail vested in William ; that Richard could not take by the executory devise. 1 Com. 372. In Tenny v. Agar, 12 East, 254, decided in 1810, the testator, after giving an estate to his son, John Agar, and his heirs, upon a certain condition, and upon a breach of that condition, to his daughter, added ; “ And in case my said son and daughter both happen to die without having any child or issue, then over.” The question was upon the validity of the devise over. Holroyd, for the plaintiff, argued upon the terms of the devise, which he considered the same as dying without leaving issue, and cited most of the cases on the point, and among them Forth v. Chapman, Porter & Bradley, Roe & Jeffery and Keilly & Fowler, all of which I have stated above. Lord Ellenborough stopped the counsel on the other side; he considered it perfectly plain that an estate tail was intended and created. *He states the words to be without leaving any child or issue. In the reporter’s statement of the case they appear to be without having any child or issue. The judges gave their opinions seriatim. Le Blanc, justice, says, “ There is no case where the words die without leaving issue simply, have been adjudged to mean without leaving issue at the time of the death ; and he remarks that in Porter <£• Bradley there were the words behind him. There is a similar decision in the case of Sir Samuel Romily v. James, 6 Taunt. 264, upon the words having no issue.
I might proceed and cite a multitude of other cases ; the books are full of them, and the counsel who opened the argument, stated that he had examined 300 of them. But I will cite no more English cases. I will, however, refer to Mr. Fearne’s conclusion upon all that had been decided when he wrote his learned treatise, which is, “ That although in the limitation of a personal estate, after a dying without issue, those words shall not ex vi termini, and without the concurrence of any other circumstance of intention, signify a dying wfithout issue then living, even though the limitation is in the nature of an estate tail by implication only ; yet, on the other hand, they shall not ex vi termini, when there is any other circumstance of intention, import an indefinite failure of issue, even though the limitation is in the nature of an express estate tail; but that in either case, if the limitation rests solely upon the usual extent and import of those words, the limitation over is too remote, and therefore void, and the whole vests in the first devisee or legatee ; but that in either case, the signification of those words may be confined to a dying without issue then living, by any clause or circumstance in the will whicli can indicate or imply such intention.” He further says, it is the same thing whether the devise of a personal estate be to one for life expressly, and if he die without issue, remainder over; or to one indefinitely, and if he die without issue, remainder over; 2 Fearne, 260, 261, 275. And again, he remarks, that in all the cases where a *293 distinction had been taken as to a devise of real or personal property, there were some circumstances in the will which the court observed confined the generality of the expression dying without issue to dying without issue then *living. This appears in the reports of the respective cases, except in that of Forth v. Chapman, and in that Lord Hardwicke said Lord Macclesfield relied upon the word leaving.
The decision of this case in the court below rests upon the distinction taken in Forth v. Chapman, between the same words as applied to real and personal property. The word leaving was relied on in the argument, but not by his honor the chancellor, and the cases cited show that that word was relied on in but few of them, and that both expressions, viz. dying without issue, and dying without leaving issue, are considered, as in truth they are, of exactly similar import. Ch. Kent has given us the names of those who supported the distinction and those who opposed it. In favor of it are Lord Macclesfield, Lord Mansfield and Lord Eldon; Lord Hardwicke both approved and condemned it, and is therefore neutralized. Those who denied any such distinction are Lord Thurlow, Lord Loughborough, Lord Alvanley, Lord Kenyon, Sir William Grant, and the King’s Bench, in 4 Mawle & Selw. 62. To which might be added Sir Thomas Sewell and Sir Joseph Jekyl and some others. The weight of English authority, in my opinion, is decidedly against any such distinction. It is true that both in England and in this country courts have anxiously seized upon any expression or circumstance in the will which would limit the generality of the expression dying without issue or without leaving issue, or for want of issue, and confine it to issue living at the death of the first taker. In the case of The Executors of Moffatt v. Strong, 10 Johns. R. 16, the word survivors had that effect. It was admitted there, that if the limitation over rested solely on the words dying without issue, it would fail—■ those words denoting an indefinite failure of issue ; but as the property was to go to the survivors of the devisees, upon the dying without issue of any of them, the testator could not have intended that the survivor should take, after an indefinite failure of issue. This general rule has been admitted in several cases ; and the same" effect has been given to the word survivor. Fosdick v. Cornell, 1 Johns. R. 440, and Jackson v. Blanshaw, 3 id. 292. In Jackson v. Staats, 11 id. 337, the word children had the same effect. See also Anderson v. Jackson, 16 Johns. R. 382, and Wilkes v. Lyon, 2 Cow. 333.
*The principle that when the words of the devise would create a fee tail in land will give the absolute estate in personalty, is recognized, I believe, in all the American cases; and that the executory devise may be sustained, where there is something more than the bare words dying without issue, to show the testator’s intention to restrain such expressions. 1 Mason, 224. 2 Munf. 479. 2 Dessaus. 113. 3 id. 259.
In the construction of wills it is the duty of courts to effectuate the intention of the devisor, if that intention is agreeable to the rules of law. The intention is to be ascertained from the will itself. If the testator uses language which has acquired a definite legal signification, the court are bound to presume that the testator intended what the words legally import; but if other parts of the will, or other expressions in the same clause, clearly show that the technical words used by the testator were used in a different sense from the legal construction, then they shall be construed according to their common acceptation. There are certain dispositions which a man may wish to make of his property which the law will not permit; and the law has said that if a testator makes such attempt, that his words shall be construed to mean something else. For' example, if a man devises personal property to his son and the heirs of his *295 body, this shall be construed exactly as if it had been given to his son abso lutely, without qualification. So in our state, if a testator devises real estate to A. and the heirs of his body lawfully begotten, this would create an estate tail which our statute converts into an estate in fee simple. Such a devise, therefore, is exactly equivalent to a devise to A. and his heirs and assigns, though it is manifest the testator intended a very different disposition of his property. That disposition being unlawful, the law has given to the words of the devise a technical meaning which courts are bound to enforce. It is well settled in England that an estate tail may be created as well by implication as by express words. For instance, the testator gives to A. an estate for life, and adds, that if he shall die without lawful issue, then he gives the estate to B.; this is the same as a devise to A. and his lawful issue. This construction is given for the benefit of the issue, otherwise they would have *no interest1; and this operates as an enlargement of the estate in A. To apply these remarks to the case before us, the language of the devise is equivalent to saying, I give and bequeath to my daughter Eliza Emily, $20,000, which I direct, to be invested in her name, the interest to be applied for her support, and the balance re-invested for her benefit; the whole to be paid her at 21 years of age. This gives her the whole property to be paid to her at 21 ; but if she does not attain the age of 21, still the property having vested, was hers, and must go as the law in such case directs. If the testator had said, I give and bequeath to my daughter E. E. and to the lawful issue of her body $20,000, this is language which, applied to a freehold estate, would in England create an estate tail, and therefore there as well as here, would give the property to E. E. absolutely. If the form of expression be varied so as to give an estate tail by implication, as, I give, &c. to E. E. $20,000, but if she die without lawful issue, then over, the law obtains its object by declaring the limitation over void, and the devise absolute. Yet this is directly against the actual intention of the testator. That intention being unlawful, it is as much the duty of courts to defeat it, as it is to effectuate it when the intention is lawful.
My conclusions upon the whole case are these: I. That the legacy of $20,000 and its interest became vested in the legatee, because, 1. It was separated from the estate of the testator; 2. It was invested in the name, or for the benefit of the legatee ; 3. The testator appointed guardians to manage his daughter’s estate ; 4. The interest was given to her use ; 5. It is to be paid at 21, and be at her own absolute disposal. II. That the legacy having vested, it was not divested by the limitation over, because the absolute property passed 'by the. will; it was not given to the legatee for life, “ but to be at her own free and absolute disposal, after she shall attain the age of 21 years.” III. If, however, the will gives E. E. only an estate for life in the first part of the clause, the subsequent limitation over being upon an indefinite failure of issue, is too remote, and therefore void as an executory devise.
I am of opinion, therefore, that the decree in the court below should be reversed, and that the respondent’s bill should be dismissed.
*By Senator Edmonds. The difficulty in this case, as in many other cases of construction of wills, arises from the fact that the testator seems to have had two intentions, irreconcileable with each other ; one as to the immediate disposition of the fund devised, and the other as to its ultimate disposition—both of which cannot be permitted to operate. The intention is the great guide in the construction of wills, but the question frequently is, as in this case, which intention ?
In determining this question, it is an important consideration, that as the *296 intention cannot be carried into effect, unless it is subservient to and in conformity with the rules of law, full force must be given to that intention which conforms most to these rules, or, as frequently happens, which violates and transgresses them the least. Thus it was with the rule in Shelly's case, which has been so wisely abolished by the revised statutes. There, although an estate was given to one expressly for life, and the remainder to his heirs in fee or in tail; yet the first taker was held to have an estate in fee or in tail, contrary to the express intention as to the ultimate disposition of the estate. That rule has never been applied, that it did not overrule the will of the testator in regard to the ultimate estate created by it; and this, upon the principle I have already mentioned, that the intentions were conflicting, and one of them run counter to the rules of law, and consequently was made to yield to them. This rule must be borne in mind while passing upon the devise in question ; for while it is contended on the one hand, that the $20,000 bequeathed was intended by the testator, in the event of his daughter’s death without children before she attained the age of twenty-one, to form a part of his residuary estate and go over to his other devisees ; it is averred on the other, that it was the intention of the testator, that this sum should vest in and absolutely belong to his daughter during her life, so that in case of her death it should descend to her heirs or next of kin, and not to the residuary legatees of her father ; and if we should be persuaded that the will can fairly be so construed as to justify both these deductions, then we have presented to us one of those cases of conflicting intentions which can be solved only by a resort to legal principles, to ascertain which intention shall control *bear down the other. In this view, it- is proper to inquire whether the testator’s intentions in regard to this legacy be of this conflicting character ; and if they are, what rule of law is to aid us in selecting that which is to control.
The devise over after Eliza Emily’s death is not free from difficulty, nor of so clear and explicit a character as of itself to aid us in arriving at a determination. The will directs that it shall be distributed, in that event, as is thereinafter directed respecting the residue of the testator’s estate. Now, there is no devise of the residue in terms ; but after carving out certain legacies, the testator divides his estate, real and personal, into three parts, and devises it to his three other children in such manner that Eliza Emily herself might ultimately become the residuary legatee, and obtain the whole estate. Thus, he gives the use of one third to his daughter Mary, but in case she dies without leaving lawful issue, then that third shall be divided among such of his other children as shall survive her. He devises the remaining two thirds to his two sons, with the same devise over in case of their dying without issue. So, that if Eliza Emily had survived her sister and brothers, they having died without issue, it seems to have been the testator’s intention that she should take their shares as residuary legatee; and if, after surviving them, she should die without issue, that portion of the estate which she might take as surviving child should descend to her heirs by inheritance from her; but what, in that event, would become of the $20,000 legacy, unless it vested absolutely in the first instance ? She could not take as residuary legatee of that, because it was not to go over until her death, nor would there be any one remaining to whom it had by this construction been devised by the testator. The consequence would be, either that the legacy would be considered lapsed, and go to the next of kin to the testator, or vest absolutely in Eliza Emily and descend to her next of kin ; in either event, the alleged intention of the testator would be overborne-
If the devise to her is such as to invest her with the absolute ownership of *298 the legacy, then we have no difficulty in deciding this case : my impression is that it did thus vest. It is not a devise of the income or interest merely of his estate *but is a portion of the estate itself, separated from the residue and set apart for a particular purpose. Fonereau v. Fonereau, 3 Atk. 645. 1 Vesey, sen. 118. The investment was to be in the name of the daughter, and that not only of the original legacy, but of its accumulation.
In the provision which the testator makes for his wife, he separates a sum from his estate and directs his executors to vest it in their names, not hers ; directs the interest to be paid to her, gives her power of disposing of the principal by will, and' in case she does not, then it is to go as part of the residuum. In the case of this devise, it is not questioned that she was to have, the use only. If the daughter was to have no more, why did the testator direct a different mode of investment, and a mode that of itself indicates ownership in the daughter 1 If the legacy to her had been invested in bond and mortgage, she and she alone would have been the obligee or mortgagee, and entitled to all the rights appertaining to that character ; if invested in public stocks, she and she only would have stockholder possessed of the rights thereto belonging. Unless she was trustee for some other person, this would imply of itself absolute ownership in her. Monkhouse v. Holme, 1 Bro. Ch. Cas. 298. Booth v. Booth, 4 Vesey, 404. The testator’s intention is still farther manifest from this : that he appoints a guardian of the person of his daughter, and others, “ guardians of her estate.” They are to pay her a portion, and, in a certain event, the whole income of her estate. It is as guardians of her estate that they are to receive that income, and pay it out to her or invest it for her benefit. When they invested the $20,000, their duty as executors ceased, and all subsequent investments of that sum. All collections and payments of interest and all investments of the accumulation were to be by them as “ guardians of her estate.” If she had acquired the absolute ownership of that sum in any other manner, precisely this course would have been necessary. Guardians of her person and of her estate would have been appointed ; they might and probably would have been different persons, and chancery would have directed an accumulation of all that was not necessary for her support; and she would not have had it in *her power to dispose of it until she became of age. So, that the testator has thrown around his bequest to her, all the indicia of absolute ownership.
It is a well settled rule of construction, that effect must, if possible, be given to every word of a will. I have considered the word estate as an important word in this will. This court decided in Jackson v. Robbins, 16 Johns. R. 587, that this word in a will carries the land, and all the testator’s interest in it.
It is also a rule of law that a devise of the interest or of the rents and profits is a devise of the thing itself, out of which that interest or those rents and profits may issue. Butterfield v. Sane, 1 Vesey, sen. 133, 154. Daw v. Pitt, or Tothill v. Chatham, 6 Bro. Par. R. 450. 7 id. Tomlin’s ed. 453. 1 Mad. R. 488. Fonereau v. Fonereau, and Booth v. Booth, before cited. Green v. Piggott, 1 Bro. Ch. R. 105. Haig v. Swiney, 1 Sim. & Stu. 487. Levi v. L'Estrange, 3 Bro. Par. Cas. 337. Cave v. Cave, 2 Vem. 508, 693. Van v. Clark, 1 Atk. 512. Stretch v. Watkins, 1 Mad. R. 252. The rule, however is to be understood with some limitations. Where the intention of the testator to give only the use, is clear, manifest and undisputed, the rule must yield to the stronger force of the intention ; but where it is doubtful whether the use only or the absolute ownership was intended to be given, the rule has been allowed to have a controlling effect. It is by means clear that in the case *300 before us the use only was devised. If there is any doubt, it is whether the ownership was not intended to be given, and the rule to which I have adverted, comes with great propriety to our aid in solving the question.
Another inquiry may very properly be made, viz. if the legacy did not vest in Eliza Emily, in whom did it vest ? It did not vest in the executors, for no estate or interest in it was devised to them ; nor was it given to them as guardians of her estate, for the investment was to be in her name, not theirs, and they had a specific duty to perform which did not necessarily give them an estate or interest in it. Nor did it vest in the other devisees named in the will, her brothers and sister, for they could take only in a certain event, w'hich might never happen ; and I have already shown that she, and *not they, might become entitled to the residuum. There was, it appears to me, no person but her in whom it could vest.
If it did vest in Eliza Emily, was it divested by her death ? It is undoubtedly now a well established rule, that where the use of a chattel is devised to one for life, with remainder to another, the devise of the remainder is valid. The devise for life in such case must be clear and explicit, and the intention of the testator to give only the use for life must be undisputed. But where the devise is such that the property in the chattel becomes vested in the first taker, any attempt of the testator to control it afterwards, or to restrict the power of disposing of it, is an interference with the absolute right of property already granted, and consequently void. Attorney General v. Hall, Fitzgibbon’s R. 314. S. C. Vin. Abr. Devise, 103, pl. 50. Bradley v. Peixotto, 3 Vesey, 324. Ross v. Ross, 1 Jac. & Walk. 154. Mannock v. Horton, 7 Ves. 391. Cuthbert v. Parrier, 1 Jacob’s R. 415. Jackson v. Bull, 10 Johns. R. 19. Jackson v. Robbins, 16 id. 537. And here, I apprehend, arose the mistake of the testator, in supposing that he had the right to control its subsequent disposition, after having devised the absolute ownership of the fund to his daughter, and hence his conflicting intentions. If, however, the limitation over was valid, and we could now be called upon to say which intention should control, I should find in the spirit of all our institutions an obligation to give effect to that intention, which confers immediately the jus disponendi rather than that which locks it up and controls it. It is equally against the general current of opinion in this country, to permit either real or personal property to be so bound down as to suspend or destroy the power of alienation. The accumulation of vast estates, and the destruction of that equality which is the great source of our happiness, would be the necessary result of the opposite practice.
Whether the limitation over in this case was not upon an indefinite failure of issue, and therefore void, is a question upon which much of our time was occupied in the argument, and in the discussion of which much learning and research were displayed by the counsel. We are not now required to establish a rule upon this point, which shall henceforth be the law *of this state. The legislature has wisely given a meaning to the disputed words which henceforth must control, and we are now to examine the question only so far as concerns the decision of this case. It has long been the rule, that a devise over of real estate, upon failure of issue, meant an indefinite failure of issue, and was void, because of its locking up and restraining the power of alienation for an indefinite period of time, and that was against the spirit of the common law; and the question now is, whether the same rule shall apply to a limitation over of personal property. The chancellor, in his decision in this case, and in Rathbone v. Dyckman, 3 Paige, 30, rules that the words without leaving issue, when ap *302 plied to personal property, must be intended to mean without leaving issue at the time of the death of the first taker, and that such a devise is not therefore void ; while he acknowledges that the settled law of the land gives a different meaning, and an entirely opposite effect to the same words when used in a devise of real estate. The propriety of giving opposite meanings to the same words, when applied to different kinds of property, and especially in the same instrument, is more than questionable ; and it is equally doubtful whether any testator intended to do so. Yet we are required to adopt such a construction, in order to give our judgment for the respondents, and to say that the testator, when he used these words in the devise to his daughter Eliza Emily, intended the very opposite of what he did when he used the same words in devising his real and personal estate to his other children. The dictates of common sense are too much at war with this conclusion for me readily to yield to it; and I cannot give the doctrine my sanction, unless the force of authority constrains me to do so.
So far as authority is concerned, the rule does not appear to me sufficiently well settled, in respect to personal property, to have a controlling force on either side. On one side, and in favor of the chancellor’s opinion, we have been cited to the case of Forth v. Chapman, 1 P. Wms. 664, and a series of decisions following in its train and sanctioning its doctrine. Against this, we have been referred to the case of Daw v. Pitt, 1 Mad. 488, 6 Bro. Par. R. 450, and a number of cases sustaining the same principle. I do not propose to examine *these various and conflicting decisions; it would occupy too much space. I have, however, paid to them such attention as the importance of the case, and the principles involved, demand. In choosing between the conflicting cases, I am influenced, not only by the consideration that it could not have been the intention of the testator to have used the same words in these very opposite senses in the same will, but by the opinion of the late Chancellor Kent, of whom it may well be .said, in respect to such questions, “ Animo videt, ingenio complexas est, eloquentia illaminavitP He says, 2 Kent’s Comm. 2d ed. p. 353, that “ it is a settled rule, that the same words which, under the English law, would create an estate tail as to freeholds, give the absolute interest as to chattels and if consistency in our system of jurisprudence, if uniformity in our legal decisions are of any value, such ought still to be the rule.
In coming to the conclusion that the devise over is void, I have felt the full force of the argument arising from the intention as to that devise over, and I am not to be understood as impugning in the least that principle which points out the intention as the great and leading rule of construction of wills. But that intention, to be effectual, must not only be consistent with other intentions expressed in the same instrument, but must conform to the rules of law. No man has a right by will to dispose of his property in an illegal manner. Were it otherwise, our statutes abolishing entails, and restraining the accumulation of personal property, would be nugatory ; and if a testator will, notwithstanding, entail his realty, or improperly accumulate his personalty, his intention, however clear or explicit it may be, must yield to the great rules of law ; for it is of much more importance that the principles on which depend the tenure of our estates and the spirit of our institutions should be preserved, than that the intention of any testator should be carried into effect.
My conclusion is, that the decree of the chancellor ought to be reversed. *By Senator Edwards. In giving the words contained in the will now in question their proper and legitimate construction, I conceive it necessary for us to determine, as near as we can from *303 that instrument, what were the intentions of the testator in disposing of the property in controversy; for I consider the doctrine to be well settled, by numerous authorities, that wills are so to be construed as to carry into effect the intentions of the testator, so far as they can be ascertained from the will itself, when the testator has not made use of expressions which, according to the established rules of law, require a different construction. Fearne on Rem. 126. 1 Bay’s R. 88. 2 Bro. C. C. 577. Doug. 327, 6 Bro. Parl. Cas. 450. 1 Mad. R. 488.
It appears to me, therefore, there are but two subjects necessary for our consideration, in order to arrive at a correct and satisfactory conclusion in de termining this cause. First, was it the intention of the testator, by his last will and testament, that the $20,000 in question should become absolutely vested in his daughter Eliza Emily, as her property, at the time of his death; and if not, then, secondly, has he made use of such expressions in his will as, according to the established rules of law, must be so construed as to create in her an absolute vested right of property at the time of his death, contrary to his intentions. From the most careful examination I have been able to give the will in question, I have been unable to satisfy myself that the testator has made use of any expression in it that would absolutely vest the $20,000 in his daughter Eliza Emily at the time of his death. He has not made use of any words denoting an absolute gift of the $20,000 to his daughter, before she arrived at the age of 21 years. He directed that $20,000 should be placed at interest, that his daughter might realize $500 of the interest yearly during her minority, or, if she married, during that time the whole interest; but no right to the principal was given to her during this time, and although to be placed at interest in her name, was so to remain, if she lived through her minority, until she arrived at the age of 21 years, and then to be at her absolute disposal. It was therefore no gift of the principal until she arrived at that age. The testator, *by his will, plainly intended to preclude her from the right of disposing of the property, until she became 21; but if he intended- it should vest in her immediately after his death, and if the property did so vest, the power of disposal necessarily attached, and she became vested of that power during her minority, contrary to his express declarations in his will. Besides, may we not infer that he did not intend the property should absolutely vest in his daughter because he did restrict her power of alienation, as such restriction would be altogether inconsistent with the rights she would acquire had there been an absolute, unconditional gift of the property in question. He evidently intended it should be at her absolute disposal, provided she attained the age of 21 years, but on no other condition; and that condition failing, he directed further what should be done with it; and it is only for us to say, by our decision, whether it shall be disposed of as he directed. Again; in that part of his will in which he makes provision for the lawful issue of his daughter, in case she died during her minority, he says such issue shall be entitled to that portion of his estate as is therein intended to be given to his daughter Eliza Emily, provided she should attain the age of twenty-one years—thereby clearly declaring it to be his-intention that the condition on which she was to have that portion, was her attaining the age of 21 years. But in addition to all this, the testator has said, in terms, that if she should die before she ararrived at the age of 21 years, and without leaving lawful issue, then the $20,000, with the addition made thereto, should be distributed as a part of his residuary interest. As to the intentions therefore of the testator, I think there can be no doubt.
The next inquiry then is, does the law require such a construction to be *305 given to this will as to frustrate and defeat the intentions of the testator ? It is contended there was such a separation of the property from the rest of the testator’s estate as to create a vested interest in his daughter in that portion of his estate. To produce such an effect, the separation should be absolute, unlimited and unconditional. In this case there was not such an unconditional and unlimited separation from the estate of the testator, as to create in his ^daughter a separate right of ownership in the $20,000 for even the shortest time. The testator provided for its return to the general fund. It was in effect placing that portion of his estate in securities in her name, to remain in the nature of a trust, subject to the control of his executors for a specific purpose, to await the happening of an event which was to determine whether the right of property should vest in her or her issue, or remain as it then was the estate of the testator, and be distributed with his residuary interest. The right of ownership could not be changed without the happening of the event that was to produce the change. Whether the separation would be absolute and unlimited in its duration, or only for a limited period, and that portion of the estate then to return to the residuum, was to depend solely upon the contingencies in the will that were to produce the result. If the daughter arrived at the age of 21, or died leaving lawful issue, the limitation by which it was to return was destroyed, and it could not return ; but if neither of these events happened, then the separation was not final, and it would return. It was therefore a separation limited to a condition which was to determine whether it should be a final separation or not. Neither of these events did happen, and therefore there was not a final separation of that portion of the legator’s estate, so as to create a separate right of property. Nor could the use of her name, in taking the securities, produce that effect; for although her name was to be used, yet she was to have no control whatever over that portion of the testator’s estate. Nor was she authorized even to receive those securities ; but the property, as well as the securities, were to remain under the direction and control of the executors; they were to make the investments ; they were to take and hold the securities," for they were to receive and pay over and invest the interest. That portion of the interest which Eliza Emily was to have the benefit of, during her minority they were to receive as her guardians. These securities it was their duty to hold in trust, to be delivered over to her provided she arrived at the age of 21 years ; and by virtue of their office, and the testator’s intentions plainly inferrable from the will, they were the legally authorized agents and trustees of the testator’s estate, on *whom devolved the right of distributing the property, if the event did not happen which was to divest them of their trust. The same instrument that directed the fund to bmplaced in her name, declared for what purpose and under what restrictions it vvas so to be placed, to wit, for the purpose of drawing interest during her minority, and not for the purpose of being subject to her disposal until she arrived at. the age of 21 years ; and at that age the testator declared by his will it should be at her free and absolute disposal: that is, it should be then given to her as her pro perty; and these are the only words in the will that can be construed into a gift of the property to her. But never having arrived at that age, she never had the free and absolute disposal of the property, or, in other words, it was never given to her, for she never reached that period of life she was required to reach to entitle her to the gift. Had the property been given at the death of the testator, but the payment postponed until she arrived at the age of 21 years, it would have vested ; but as the gift itself is postponed, or, in other words, not to be made until the donee arrived at a certain age, and as she never attained that age, the property never can vest. In the case of Fonereau v. *307 Fonereau, 3 Atk. R. 645, the lord chancellor says, “ It is true there is a distinction where a legacy is given to one at the age of 21: there it is not vested; but where it is to him to be paid at 21, it is vested ; and this distinction is well settled.” See also 1 Atkyns’ Rep. 512.
Again; it is insisted that a bequest of the interest in this case was a bequest of the principal, and that the property therefore became vested in Mrs. Paterson. The bequest of the interest of money indefinitely, where no direction is given in relation to the principal, may result substantially in a bequest of the principal. 1 Mad. R. 256. 1 Sim. & Stu. 487. 4 Vesey, 58. And the reason is obvious : the bequest of the interest in such cases would carry the principal, because it cannot be separated, and requires the principal to uphold and sustain the bequest; and the same remarks are true in relation to the dividends arising from bank stock. But the bequest of the interest of a sum of money, or of the dividends of *bank stock, to one for a limited time, or until the happening of an event, and at the expiration of the time, or on the happening of the event, a bequest of the principal or stock to another, can never have the effect of rendering void the bequest of the principal or stock, or of vesting it in the legatee of the interest or of the dividends of the stock ; for in such case the interest or dividends may be separated from the principal or stock. 3 Vesey, 363.
Had the $20,000 become absolutely vested in Mrs. Paterson at any time during her life, I admit it would also have vested in her husband by virtue of his matrimonial rights, and he would have had the power of disposing of the same ; and any limitation over in the will, in favor of a residuary legatee, would in that case have been inoperative and void, as repugnant to the gift. 3 Fitzgibbon, 314. Jacob & Walk. R. 415. 5 Mass. Rep. 504, 5. 15 Johns. Rep. 584, 585, 586. 3 Vesey, 324.
Again ; it is contended, on the part of the appellant, that the words in the will, “ In case my said daughter Eliza Emily shall die before she arrives at the age of 21 years, and without leaving lawful issue,” mean an indefinite failure of issue, and that the limitation over is therefore void as being too remote, and therefore the right of property vested in Mrs. Paterson. Most of the cases cited by the appellant’s counsel to establish this position are cases where real and personal property have been included in the same will, and where the same phraseology has been applied to both species of property. But such is not the nature of the will now under consideration. The phraseology here is to be applied to personal property only ; and when so applied, the question is, do the words without leaving lawful issue, mean an indefinite failure of issue ? Or do they mean without leaving lawful'issue at the time of the death of Mrs. Paterson ? It clearly appears to me that the time referred to by the testator is the time of her death ; that this is the true import and meaning of the words; the only meaning he intended they should convey; and the only meaning they can convey, unless we suffer a course of metaphysical reasoning most strangely to pervert their literal signification; and that this construction, limiting the words in *the will without leaving lawful issue to the time of the death of the legatee, when applied to personal property, is clearly their legal as well as their literal import and meaning. This construction of these or similar words in relation to personal property was adopted even before the decision in the case of Forth v. Chapman, 1 P. Wms. 663, so much relied upon by the respondent’s counsel, and so forcibly controverted by the appellant’s counsel in arguing this cause.
I have been unable to find that the decision in Forth v. Chapman has been overruled; on the contrary, it has been repeatedly recognized, and formed the *308 basis of many subsequent decisions. Keiley and others v. Fowler and others, 6 Brown’s P. C. 318. Sheppard v. Lessingham, Ambl. R. 122. Atkinson v. Hutchinson, 3 P. Wms. 258, and note 1. Goodtitle v. Pegden, 2 T. R. 720. Crook v. De Vandes, 3 Vesey, 203. In the last case above referred to, Lord Eldon says, in delivering the opinion of the court, he had heard the case of Forth v. Chapman cited for years, and repeatedly by Lord Kenyon, as not to be shaken ; and he adds, “ when a leasehold estate is given to a person and the heirs of his body, with a limitation over if he dies, and the testator uses the words and leaves no such heirs, the settled construction is that it means at his death.” And again, in the case of Brashear v. Macy, 3 J. J. Marsh. R. 91, the court say that “in a devise of personal estate, the expression dying luiihout issue is invariably interpreted to mean, ex vi termini, issue living at the death of the first legatee ; but when the devise is of real estate, there is some diversity in the ancient authorities as to the import and effect of the same expressions.” See also 4 Kent’s Comm. 276. Rathbone v. Dyhman, 3 Paige’s Ch. R. 30. There are numerous other cases, as well ancient as modern, recognizing the same rule of construction. As the expressions therefore in this will, dying without leaving lawful issue, I think are clearly settled to refer to the time of the death of Mrs. Paterson, and are not to be construed as meaning an indefinite failure of issue, the rule which existed previous to the revised statutes and at the time of the death of the testator, that words which would give an estate tail in real property, would give an absolute estate in personal, can have no application to the case now under review.
*1 readily concede the doctrine laid down in Daw v. Pitt, 6 Bro. Parl. Cas. 450, and 1 Mad. R. 488, and Attorney-General v. Hall, Filzgibbon, 314, that where there is an absolute unconditional gift of a chattel to a legatee, the limitation over is void. But if I am correct in the conclusion I have before arrived at, that the contingency never happened which was to vest the property in question in Mrs. Paterson, and therefore she never had in it an absolute vested right, I cannot readily perceive how the doctrine of limitation, as laid down in these cases is to apply, in both of which there was an absolute vested interest in the first legatee, which rendered void the limitation over. But in conceding the doctrine laid down in the case of Daw v. Pitt, and the Attorney-General v. Hall, I do not intend to concede what was contended for by the appellant’s counsel, that the case of Forth v. Chapman was overruled by these decisions. In the case of the Attorney-General v. Hall, the testator made an absolute bequest of the property to the legatee for life, and so much as he did not dispose of he gave to charitable purposes, and the court held the first legatee might dispose of the whole, for the obvious reason that the legatee had the absolute right of property, and therefore the right of disposal necessarily attached. In the case of Daw v. Pitt, the testator gave to Sir Wm. Pynsent the dividends of £4000 bank stock, during his life, and after his death to Leonora Ann Pynsent, during her life, and after her death to the heirs male of her body; and for want of such issue, he gave the said estate to Wm. Daw, during his life, on condition he would take the name of Tothill. And the court decide that Sir Wm. Pynsent took an absolute interest in the property, and the limitation over was void; for if this had been real estate, it would have created an express estate tail, and what in real estate then created an estate tail, in personal property gave the absolute estate ; and therefore, as the legal effect of the will was to give the dividends absolutely to the first legatee, the right of disposal necessarily attach, as in the case of the Attorney-General v. Hall, and the absolute interest or ownership of the dividend carried with it the stock also, for it required the stock to uphold and sustain that inte *310 rest. I view these cases as belonging to an entirely different *class from that of Forth v. Chapman. In each of these cases there was an absolute bequest of the personalty directly to the legatee, with a limitation over ; and the legatee having the whole chattel interest in each case, the limitation over was void, of course, for he had the right of disposal.
The same principle, I apprehend, will be found in all that class of cases which were supposed to overrule the case of Forth v. Chapman. I have referred to these two cases, as they were selected by the appellant’s counsel as their strong cases for this purpose. In the case of Forth v. Chapman, Walter Gore devises all his estate real and personal to Chapman, in trust, for the use ofWm. and Walter Gore, during the term of the lease mentioned in his will, and if either of the Gores should die, leaving no issue, he gave the leasehold premises to the daughter of his brother, Wm. Gore, and his sister’s children; and the question was whether the limitation over of the leasehold premises to the children of the devisor’s brother and sister was void, as too remote—and the limitation over was held valid. In this case the property was not bequeathed absolutely to either of the legatees in expectancy, and the right of property vested in neither, and neither had any right of disposal, but it was bequeathed to Chapman for their use, to wait the happening of the event by which it was to vest, to wit, the death of either of the Gores without issue; and that was to determine in whom should vest the absolute right of property, and of course the right of disposal. In this case, therefore, the property was suspended in the hands of a trustee, to wait the happening of an event which was to determine in whom should vest the right of property ; but in the other class of cases the absolute right of property was given in the first instance, either in terms or by the legal effect of the will ;, the right of disposal necessarily attacked, and the property could not be limited over, because the right of property vested in the first instance, and the power of disposal attached. Hence it appears to me there is a manifest difference in principle in these cases. Besides, the master of the rolls, in giving the opinion in the case of Daw v. Pitt, which is the strongest case the appellant’s counsel rely upon as overruling the case of Forth v. Chapman, acknowledges *that that case was plainly distinguishable from the case of Forth v. Chapman; clearly intimating no design whatever to overrule that decision. Had the master of the rolls, who first decided the cause, or the house of lords, who afterwards reviewed it, designed to have overruled the decision in the case of Forth v. Chapman, it would have been so said, in terms, and not left to doubtful inferences. But as neither of these courts has given any intimation of their design to overrule that decision, and as one of these courts in giving its decision acknowledges there was a distinction, I am led to the conclusion that the decision of Forth v. Chapman has not been overruled by the cases I have alluded to; nor am I aware that it has been overruled by any adjudged cases, so far as it relates to personal property. If the principles which governed the court in making that decision are correct, which have formed the basis of numerous decisions since, I think we may safely follow it in the case now before us ; and as the $20,000 were placed at interest, in the nature of a trust, and to remain in that situation for the happening of the event by which it was to vest in Mrs. Paterson, to wit, her arriving at the age of twenty-one, or in her issue on her leaving lawful issue, which is now defined by the authorities to mean at the time of her death; and as neither contingency happened, we are brought to the irresistible conclusion that when Mrs. Paterson died within her minority, without lawful issue, no event could happen that could deprive the estate of Ellis of the $20,000 in *312 question ; that it could no longer be held in suspense, in the nature of a trust, and that it thus became a proper subject of distribution, as directed by his will.
From the views, therefore, I entertain of this case, it becomes unnecessary for me further to consider the points raised. Having come to the conclusion that the $20,000 in question never did absolutely and unconditionally vest in Mrs. Paterson, and therefore never could vest in the appellant, I am for affirming the decree.
*On the question being put, Shall this decree he reversed ? the members of the court voted as follows :
In the affirmative—The President, The Chief Justice, Mr. Justice Sutherland, Mr. Justice Nelson, and Senators Armstrong, Conklin, Crofsey, Edmonds, Fisk, Hubbard, Macdonald, Quackenboss, Sherman, Stow-ER, SUDAM, WeSTCOTT—16.
In the negative—Senators Deitz, Dodge, Edwards, Gere, Griffin, Halsey, Lansing, Lynde, Van Schaick—9.
Whereupon the decree of the Chancellor was reversed, except as to costs, and this Court decreed that the fund of $20,000, with the accumulations thereof, vested in the legatee, Eliza Emily, and became, on the event of her marriage with the appellant, the absolute property of the appellant, the limitations over of the fund contained in the will being contrary to law, and void ; and that the appellant was entitled to all additions to the fund by the accumulations of interest or otherwise, since the death of his wife, and that the cause be remitted to the court, of chancery, with directions that it be referred to a master, to state an account; and that the respondents be ordered to assign securities and pay over moneys, and that the costs of both parties, as well in chancery as here, be paid out of the general residue of the estate.